INTERNATIONAL ORDER OF DANIEL *v.* GREEN.

Opinion delivered January 27, 1930.

*Coleman & Riddick,* for appellant.

*Glover & Glover,* for appellee.

SMITH, J. Appellant, a fraternal insurance order, operating through local lodges, issued a benefit certifi-

cate in the sum of $300 to Diana Green, which was payable upon her death to her son Lawrence Green, and upon the death of the insured this suit was brought to collect the amount alleged to be due upon this certificate.

The members were required to pay monthly dues to the local lodge of which they were members, and to pay quarterly assessments to the order itself, hereinafter referred to as the order, but these assessments were collected by the local lodge officers. The quarterly assessments were payable upon the first day of each quarter, and became delinquent if not paid on or before the fifteenth day of the first month of the quarter, and the constitution and by-laws of the order which were made a part of the benefit certificate, provided that, if the dues and assessments were not paid within the time limited, the delinquent member should be suspended until duly reinstated, and the certificate was invalid as a contract of insurance during the suspension. Provision was made for reinstating a delinquent member by paying the arrears, and furnishing the certificate of a practicing physician that the member applying for reinstatement was then in good health.

It is insisted by the order that the undisputed competent testimony shows that the insured was delinquent in the payment of both her dues and assessments at the time of her death, and that the attempt which was made to reinstate her was unsuccessful because she was unable to furnish, and did not furnish, the required certificate as to the condition of her health.

We do not decide this question, for the reason that the right to recover must be denied upon another ground. The order denied liability on the ground that the insured was not a member at the time of her death and was "nonfinancial," as the officers of the order expressed it. Representations were made to the ruling officers of the order by the officers and members of the local lodge of which the insured had been a member to the effect that, on account of her protracted illness, immediately preceding

her death, the insured was in destitute circumstances, and had left no money or property with which the expenses of her burial might be paid, and an appeal was made to the order to provide funds to pay the funeral expenses.

The president and secretary of the order issued a draft upon the treasurer of the order for $50, which recited that it was issued "as donation by request of Local Lodge Diana Green nonfinancial," and the draft itself was a part of the receipt, which reads as follows:

"Receipt

$50    "International Order of Daniel

"Little Rock, Ark., February 7, 1929.

"Received of the International Order of Daniel, fifty and no /100 dollars, as payment in full, which releases the International Order of Daniel of all claims that I now hold, or that may come due hereafter against the International Order of Daniel, and now this amount accepted as a settlement in full on Policy No. 4480 for Diana Green, Guardian of Council No. 111.

"Signed X Lawrence Green,

"Witnessed by Mrs. S. S. Phillips,

"Donation only."

The attesting witness to the receipt, as well as other members of the local lodge, whose only interest in the matter appears to have been to aid in securing the donation, testified, that the transaction was explained to and fully understood by Lawrence Green, who was the plaintiff in the action. The draft was indorsed by the payee, and was collected in due course. The plaintiff admitted that he could read and write, but denied that he had read the receipt, and explained his failure so to do by saying that he supposed the draft was intended to cover what was known in the order as the "burial benefit." Under the constitution and by-laws of the order a burial benefit of $50 was payable to the estate of each member, but this benefit was contingent upon the member being in good standing or "financial," as it was expressed,

at the time of his or her death, so that, if the benefit certificate had lapsed on account of nonpayment of dues and assessments, the burial benefit had also lapsed.

Plaintiff did not testify that he had been induced to sign the receipt through any fraud or misrepresentation practiced upon him, as to the purport and effect of the instrument which he signed, and he seeks to excuse his action in signing it by saying that he supposed he was being paid the burial benefit. He admits, however, that he had an opportunity to read the receipt, and his only excuse for not doing so was that he did not know what it was, and thought it was something else. The receipt is so unambiguous that any one reading it must know its effect, and, as its execution was free from fraud, this effect must be given it. While it was designated as a mere donation, this donation was recited to be in full satisfaction and settlement of any rights under the certificate here sued upon, and as the sum paid was a sufficient consideration for this release and settlement, a verdict should have been rendered in favor of the order. *Bankers' & Planters' Mut. Ins. Assn.* v. *Archie,* 145 Ark. 481, 224 S. W. 950.

For the error indicated the judgment in favor of the plaintiff for the amount of the certificate must be reversed, and, as the case has been fully developed, it will be dismissed. It is so ordered.